UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOOKMIN BEST INSURANCE COMPANY, LTD. (US Branch) f/k/a Leading Insurance Group Insurance Company Ltd., | 18 Civ. 782 (PAE) |
| Plaintiff, | OPINION & ORDER |
| -v- | |
| FOREMOST INSURANCE COMPANY, | |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a dispute over insurance coverage. Plaintiff Kookmin Best Insurance Company, Ltd. ("Kookmin") moves for summary judgment seeking an order declaring that defendant Foremost Insurance Company ("Foremost") has a duty to defend third party 660 Realty Corp. ("660 Realty") in two personal injury actions. Kookmin also seeks a declaratory judgment that, under the terms of Foremost's and Kookmin's insurance policies, Foremost must reimburse Kookmin for any costs Kookmin has paid to defend 660 Realty in these actions. Foremost cross-moves for summary judgment seeking a declaration that it has no duty to defend 660 Realty or reimburse Kookmin. It principally argues that the underlying actions fall outside the scope of its policy.

For the reasons that follow, the Court grants Kookmin's motion for summary judgment as to Foremost's duty to defend 660 Realty in the personal injury actions and denies Foremost's cross-motion. The Court also grants Kookmin's motion seeking a declaration that Foremost is obligated to reimburse Kookmin for expenses incurred in defending 660 Realty in the personal injury actions.

## I.  Background[1]

### A.  The Underlying Personal Injury Actions

This litigation arises out of two identical personal injury lawsuits brought by Omar Ore in New York State Supreme Court, Bronx County.  These are captioned *Ore v. 660 Realty Company and Queens Optometric Care, PLLC, d/b/a Bronx Eye Associates, Inc.*, No. 300818-2016, and *Ore v. 660 Realty Company and Queens Optometric Care, PLLC, d/b/a Bronx Eye Associates, Inc.*, No. 0022826-2017.  JSF ¶ 6.

Ore claims that on February 21, 2015, he sustained personal injuries in a slip and fall that occurred on a sidewalk abutting 665 Pelham Parkway North in the Bronx.  *Id.* ¶ 9.  He asserts that 660 Realty owns the premises and leased it to Queens Optometric Care PLLC d/b/a Bronx Eye Associates ("Bronx Eye") before the date of the accident.  *Id.*  Ore alleges that both 660 Realty and Bronx Eye caused his accident by negligently owning, maintaining, and repairing the premises.  *Id.*  Specifically, Ore alleges:

> 13.  That the aforesaid injuries to plaintiff Omar Ore occurred solely and wholly through the negligence of the defendants, their agents, servants and employees, in the ownership, leasing, operation, maintenance, control and management of their respective premises and more particularly known as 665 Pelham Parkway North, County of Bronx, State of New York, although said defendants knew or should have known of the dangers and hazards there existing and nonetheless failed to remedy same.

> 14.  As a result of the aforesaid, the Plaintiff was rendered sick, sore, lame and disabled, was caused to suffer great pain, was and is internally and externally injured, will continue to endure great pain and suffering, and has sustained and will continue to sustain special damages, all to Plaintiff's damage.

---

[1] The Court's account of the facts of this case is drawn from the parties' submissions on the motions and cross-motions for summary judgment, including the declarations and attachments of Matthew Kraus, Dkt. 22 ("Kraus Decl."), and Dan D. Kohane, Dkt. 27 ("Kohane Decl."), as well as the parties' Joint Statement of Undisputed Material Facts (Dkt. 18) ("JSF") and attached exhibits.

JSF, Ex. E ("Ore Compl.") ¶ 13–14. Defendants in that action, 660 Realty and Bronx Eye, denied Ore's material allegations. JSF ¶ 9.

Ore obtained a default judgment against 660 Realty in the first action but agreed to withdraw or vacate that judgment after he brought the second identical action. *Id.* ¶ 7. Both actions are pending; the parties agreed to accept the pleadings in the first action as applicable to the second action. *Id.* The parties to the underlying actions intend either to consolidate the two proceedings or discontinue the first action and proceed with the second. *Id.*

## B. The Lease Between 660 Realty and Bronx Eye

On October 1, 2006, 660 Realty and Bronx Eye entered into a written lease, which was in effect on the date of Ore's alleged accident. JSF ¶ 10; *see also* JSF, Ex. F ("Leasing Documents"). Under the lease, 660 Realty agreed to lease a portion of 665 Pelham Parkway North to Bronx Eye. On January 1, 2015, 660 Realty and Bronx Eye entered into a rider to the lease, which, among other things, extended the terms of the lease to December 31, 2024. The rider describes the leased premises as "First Floor – Suite 103 and Suite 104." JSF ¶ 11.

On February 1, 2015, 660 Realty and Bronx Eye also entered into a lease modification agreement.[2] The lease modification agreement provides, in relevant part:

> Paragraph 58, "Sidewalk", of the Rider to the Lease is modified as follows: [660 Realty] shall keep the sidewalk and related curb areas in clean condition, free of debris, snow and ice. [Bronx Eye] shall make any and all repairs to the said sidewalks required as a result of the tenant's acts or omissions.

---

[2] Kookmin writes that it has not independently verified the authenticity of the 2015 rider or lease modification agreement, but assumes, only for the purposes of this motion, that the rider and lease modification agreement are valid and were in effect on the date of Ore's alleged accident. *See* Dkt. 23, ("Kookmin Mem.") at 4 n.3. Accordingly, the Court will assume, for the limited purpose of resolving the parties' motions, that the rider and lease modification agreement are valid.

Leasing Documents ¶ 3. The rider further provides that 660 Realty is responsible for exterior maintenance, and that Bronx Eye shall pay, in additional rent, certain operating expenses incurred by 660 Realty in maintaining the premises. These expenses include "service and maintenance to the building and its appurtenances, . . . the parking area, driveway, landscaping fencing, [and] snow or other hazard removal or abatement . . . ." *Id.* ¶ 6.

### C. The Subject Insurance Policies

#### 1. The Foremost Policy

Foremost issued a commercial general liability policy to Bronx Eye, which was in effect at the time of Ore's accident. *See* JSF, Ex. H ("Foremost Policy"). It provides, in relevant part, that Foremost will pay to Bronx Eye "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." JSF ¶ 18. Foremost "will have the right and duty to defend the insured against any 'suit' seeking" damages for bodily injury or property damage. *Id.* However, Foremost "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or property damage to which this insurance does not apply." *Id.* The Foremost Policy also contains an Additional Insured Endorsement, which lists 660 Realty as an additional insured entity. *Id.* ¶¶ 19–20.

The Foremost Policy further provides:

5. Other Insurance
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance
This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of

4

the other insurance is also primary. Then, we will share with all that
other insurance by the method described in c. below.

b. Excess Insurance
This insurance is excess over:

> (1) Any of the other insurance, whether primary,
> excess, contingent or on any other basis:

>> (a) That is Fire, Extended Coverage
>> Builder's Risk, Installation Risk of
>> similar coverage for "your work";

>> (b) That insures for direct physical
>> loss to premises rented to you or
>> temporarily occupied by you with
>> permission of the owner;

***

*Id.* ¶ 18.

### 2.    The Kookmin Policy

Kookmin's predecessor, Leading Insurance Group Insurance Company, Ltd., issued a

business owners policy to 660 Realty, which was effective from July 9, 2014 to July 9, 2015 (the

"Kookmin Policy"). *Id.* ¶ 12.  Like the Foremost Policy, the Kookmin Policy provides that

Kookmin "will have the right and duty to defendant the insured against any 'suit'" seeking

"'bodily injury' or 'property damage.'" *Id.* ¶ 14.  When coverage under the Kookmin Policy is

"excess, [Kookmin] will have no duty under Business Liability Coverage to defend any claim or

'suit' that any other insurer has a duty to defend." *Id.* Business Liability Coverage is "excess"

over "[a]ny other insurance that insures for direct physical loss or damage" or "[a]ny other

primary insurance available to [660 Realty] covering liability for damages arising out of the

premises or operations for which [660 Realty] ha[s] been added as an additional insured by

attachment of an endorsement." *Id.*

On August 21, 2017, Kookmin tendered 660 Realty's defense and indemnity to Foremost on the basis that 660 Realty was entitled to coverage as an additional insured under the Foremost Policy. *Id.* ¶ 21. On October 23, 2017, Foremost denied the tender, taking the position that it is not obligated to afford coverage to 660 Realty. *Id.* ¶ 22.

### D.    Procedural History

On November 19, 2017, Kookmin filed its complaint in New York trial court seeking a declaration that Foremost is obligated to defend and indemnify 660 Realty and reimburse Kookmin for fees expended on 660 Realty's behalf. Dkt. 1-2 ("Compl.").

On January 29, 2018, Foremost filed a notice of removal to this Court based on diversity jurisdiction. Dkt. 1. On February 13, 2018, Foremost filed its answer to Kookmin's complaint. Dkt. 6. On April 4, 2018, the Court held an initial pretrial conference.

On April 18, 2018, at the Court's suggestion, the parties submitted a Joint Statement of Undisputed Material Facts in anticipation of summary judgment motions. *See* JSF. On May 18, 2018, Kookmin moved for summary judgment on its claims for declaratory relief, Dkt. 21, filing a memorandum of law, *see* Kookmin Mem., and the Kraus Declaration and attached exhibits, Dkt 22. On June 15, 2018, Foremost filed its cross-motion for summary judgment, Dkt. 26, its memorandum of law in support of its cross-motion and in opposition to Kookmin's motion, Dkt. 28 ("Foremost Mem."), and the Kohane Declaration, Dkt. 27. On July 13, 2018, Kookmin filed a memorandum of law in reply. Dkt. 31 ("Kookmin Reply Mem.").

## II.    Applicable Legal Standards

### A.    Summary Judgment Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"A court faced with cross-motions for summary judgment need not 'grant judgment as a matter of law for one side or the other,' but 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Cariou v. Prince,* 784 F. Supp. 2d 337, 345 (S.D.N.Y. 2011) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

**B.      Principles for Interpreting Insurance Policies Under New York Law**

The parties agree that New York law governs interpretation of the two insurance policies. *See* Kookmin Mem. at 10; Foremost Mem. at 12. "The construction of an insurance contract is

ordinarily a matter of law to be determined by the court." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003) (citing *Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 89 N.Y.2d 308, 316 (1996)). In resolving a summary judgment motion involving contract interpretation, "a court should accord [contract] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).

When contract language is unambiguous, "the district court [may] construe it as a matter of law and grant summary judgment accordingly." *Id.* However, if policy language is ambiguous, New York law provides that such ambiguities must be construed in favor of the insured and against the insurer. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010); *Handelsman v. Sea Ins. Co.*, 85 N.Y.2d 96, 101 (1994) ("Where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer.").

Whether a contract is ambiguous is a threshold question of law for the court. *Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). "Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998). The Second Circuit has explained that "ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"

*Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)).

If the language in an insurance policy is ambiguous, the court should examine the language "from the vantage point of the reasonable expectations and purposes of the ordinary person." *Haber*, 137 F.3d at 695 (alterations and internal quotation marks omitted). The court should also "consider extrinsic evidence submitted by the parties to assist in determining their actual intent." *McCostis v. Home Ins. Co. of Ind.*, 31 F.3d 110, 113 (2d Cir. 1994). "If the extrinsic evidence does not yield a conclusive answer as to the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved in favor of the insured." *Id.*

## III.     Discussion

Kookmin argues that it is entitled to a declaration that Foremost is obligated to defend 660 Realty in the underlying personal injury actions, and that Foremost's coverage obligation is primary to Kookmin's coverage obligation. The Court addresses each issue in turn.

### A.     The Duty to Defend

Under New York law, an insurer's duty to defend against a claim is "exceedingly broad." *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8 (1985). An insurer is obligated to defend a claim if the underlying complaint "suggest[s] the reasonable possibility of coverage" under the insurance policy. *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 66 (1991). An insurer's duty to defend is excused only if it can show that, as a matter of law, "there is no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured." *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. 1989).

Here, the Foremost Policy lists 660 Realty as an additional insured. It extends coverage to 660 Realty for liability "caused, in whole or in part, by [Bronx Eye's] acts or omissions . . . in

the performance of [its] ongoing operations for [660 Realty] at the location(s) designated above." JSF ¶ 19. The location of covered operations is designated as "665 Pelham Parkway North Ste. 2." *Id.* ¶ 20. It follows that Foremost is obligated to defend 660 Realty in the underlying actions if Ore's complaints allege that his injuries were caused, at least in part, by Bronx Eye's acts or omissions performed as part of its ongoing operations for 660 Realty, and the ongoing operations were performed at a covered location.

Foremost argues that, for two reasons, 660 Realty does not qualify as an additional insured: First, it argues, Ore does not allege that his accident occurred at a location covered by the Foremost Policy. Second, it argues, as alleged, Ore's injuries were not caused, in whole or in part, by Bronx Eye. Neither argument is persuasive.

### 1. Foremost Cannot Establish That Ore's Alleged Accident Occurred Outside a Covered Location.

Foremost principally argues that 660 Realty does not qualify as an additional insured under the Foremost Policy because Ore's alleged accident did not occur at a covered location. As Foremost observes, its policy identifies the "Location of the Covered Operations" as "665 Pelham Parkway North, Ste. 2." *Id.* ¶¶ 19–20. Ore's alleged injuries occurred outside Suite 2, on the sidewalk adjacent to the building in which Bronx Eye operates. In Foremost's view, an accident on the sidewalk does not trigger a duty to defend under the Foremost Policy because the sidewalk is not a covered location.

Foremost's analysis overreaches. In fact, New York courts have repeatedly held that, in the context of liability insurance coverage disputes, if a sidewalk is "necessarily used for access in and out of the premises," it is considered, "by implication, part of the premises." *ZKZ Assoc. v. CAN Ins. Co.*, 89 N.Y.2d 990, 991 (1997) (internal quotation marks and alterations omitted); *see also Frank v. Continental Cas. Co.*, 999 N.Y.S.2d 836, 838 (2d Dept. 2014) ("The

underlying claim arises out of the maintenance or use of the leased premises, as the sidewalk was necessarily used for access in and out of the leased building."); *1515 Broadway Fee Owner, LLC v. Seneca Ins. Co., Inc.*, 933 N.Y.S.3d 436, 437 (1st Dept. 2011) (holding that insurance policy covered injuries suffered "in a part of the premises that was used for access in and out of the leased space . . . "); *Jenel Mgmt. Corp. v. Pac. Ins. Co.*, 865 N.Y.S.2d 58, 58 (1st Dept. 2008) (same); *Ambrosio v. Newburgh Enlarged Sch. Dist.*, 774 N.Y.S.2d 153, 155 (2d Dept. 2004) ("Although the sidewalk where the injured plaintiff fell was not specifically named in the endorsement as leased premises, its use was incidental to the covered premises as a means of getting from the rooms within the School to the fields where the dog show was being held."). In contrast, where a plaintiff alleges that she suffered injuries on a portion of a sidewalk that was near, but not necessary to access, the premises, a court may conclude that the injuries did not arise out of the operation of the premises. *See Town Plaza of Poughquag, LLC v. Hartford Ins. Co.*, 175 F. Supp. 3d 93, 100 (S.D.N.Y. 2016) ("In the present case, the mere fact that [plaintiff] was walking . . . on a sidewalk leading away from the store is not sufficient to find that the injury arose out of the maintenance, use, or operation of the pharmacy. . . . Here, the sidewalk where [plaintiff] was injured was not necessary for entering the pharmacy.").

Applying these principles, if Ore's alleged injuries occurred on a part of the sidewalk that is necessarily used to access Bronx Eye's premises, the site of the injury would be deemed part of the premises covered by the Foremost Policy. *See ZKZ Assoc.*, 89 N.Y.2d at 991. To answer that factual question, the Court looks to the allegations within "the four corners of the underlying complaint." *Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997).

Ore's allegations are ambiguous on this point. Ore asserts only that "[o]n or about 2/21/2015, at the [premises] known at 665 Pelham Parkway North . . . Plaintiff Omar Ore was caused to be injured." Ore Compl. ¶ 12. This ambiguity, however, does not help Foremost. To relieve itself of its broad duty to defend 660 Realty as an additional insured, Foremost carries a heavy burden. It must establish, based on Ore's allegations, "that there is no possibility" of coverage. *All State Interior Demolition, Inc. v. Scottsdale Ins. Co.*, 168 A.D.3d 612, 2019 WL 346558, at *2 (N.Y. 1st Dept. Jan. 29, 2019). Put differently, Foremost must demonstrate that the only reasonable interpretation of Ore's allegations is that Ore suffered his injuries off Bronx Eye's premises. Because Ore's complaint leaves open the reasonable possibility that he suffered his alleged injuries in a location necessarily used to access Bronx Eye's premises—and, therefore, considered part of the premises—Foremost has failed to carry that burden.

**2.      Ore Alleges That His Injuries Were Caused By Bronx Eye.**

Foremost alternatively argues that its duty to defend 660 Realty is not triggered because Ore does not allege that his accident was caused by the operations of the named insured, Bronx Eye. Foremost Mem. at 17. Where, as here, a policy limits coverage to an injury caused "in whole or in part" by the "acts or omissions" of a named insured, the duty to defend exists if the named insured's conduct is the proximate cause of the injuries alleged in the underlying lawsuit. *See Burlington Ins. Co. v. N.Y.C. Tr. Auth.*, 29 N.Y.3d 313, 317 (2017). "Accordingly, when a policy limits coverage to an injury 'caused, in whole or part' by the 'acts or omissions' of the named insured, coverage is extended to an additional insured only when the damages are the result of the named insured's negligence or some other act or omission. *Hanover Ins. Co. v. Philadelphia Indemnity Ins. Co.*, 73 N.Y.S.2d 549, 551 (1st Dept. 2018). In other words, if Ore

alleges that Bronx Eye's acts or negligence, performed as part of Bronx Eye's ongoing operations, proximately caused his injuries, Foremost's duty to defend is triggered.

Foremost argues that 660 Realty, not Bronx Eye, was obligated to maintain the sidewalk on which Ore allegedly slipped. It points to the 2015 rider to the lease, which provides that 660 Realty "shall keep the sidewalk and related curb areas in clean condition, free of debris, snow and ice." Leasing Documents at ¶ 3. On that basis, Foremost argues, Bronx Eye did not have a duty to maintain the sidewalk. Thus, its conduct could not be the proximate cause of Ore's injuries.

However, the leasing documents make clear that Bronx Eye does have some obligations with respect to the sidewalk in certain circumstances. Specifically, Bronx Eye is required to "make any and all repairs to the said sidewalks required as a result of [its] acts or omissions." *Id.* If Bronx Eye's conduct or omissions caused defects to the sidewalk, it would be obligated under the lease to make repairs. If it negligently failed to do so, its negligence would be the proximate cause of an injury sustained as a result of those defects.

The broad allegations in Ore's complaints are entirely consistent with such a scenario. Ore alleges that all defendants—including Bronx Eye—caused his injuries through their "negligen[t] . . . ownership, leasing, operation, maintenance, control and management of their respective premises." Ore Compl. ¶ 13. Ore further alleges that defendants "knew or should have known of the dangers and hazards there existing and nonetheless failed to remedy same." *Id.* If Ore's allegations are credited, it is reasonably possible that Ore's injuries were caused, at least in part, by Bronx Eye's negligent conduct.

A hypothetical illustrates the point: If Bronx Eye left a hose running and allowed water to pool on the sidewalk outside the front door of the building, and that water subsequently froze

and created a patch of ice, Bronx Eye presumably would be obligated, under the lease, to remedy the danger it created. If it negligently failed to do so and Ore later slipped on that ice, Bronx Eye's conduct would be a proximate cause of Ore's injuries. Ore's allegations are compatible with such a hypothetical scenario, as well as other scenarios the Court can readily imagine.

To be sure, a factfinder may ultimately determine that Bronx Eye's acts or omissions did not create any defects in the sidewalk that Bronx Eye was obligated to repair, and that Ore was injured solely because 660 Realty breached its duty to keep the sidewalk free of snow and ice (or that Ore was injured for some other reason, or that he was not injured at all). But that uncertain outcome is immaterial to the question whether Foremost is obligated to defend 660 Realty. Because Ore's allegations "suggest a reasonable possibility of coverage," *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) (alteration omitted), Foremost's duty to defend is triggered. *See also Vargas v. City of New York*, 158 A.D.3d 523, 525 (N.Y. 1st Dept. 2018) (insurer was required to defend additional insured because "it is possible that plaintiff's injury was caused by" a named insured).

Accordingly, the Court holds, with Kookmin, that Foremost is obligated to defend 660 Realty under the terms of its policy.

### B.    Foremost's Coverage Obligation is Primary to Kookmin's Coverage Obligation.

The Court considers next whether Foremost's coverage obligation is primary to Kookmin's obligation, such that Foremost must reimburse Kookmin for expenses associated with defending against the underlying personal injury actions.

"When an insured has more than one potentially applicable policy for a claim, courts determine the insurers' obligations to the insured by applying a body of law developed to resolve 'other insurance' disputes." *Great N. Ins. Co. v. Mt. Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 687

(1999). If the two policies contain irreconcilable "other insurance" clauses, the clauses "cancel each other out and the companies must apportion the costs of defending and indemnifying . . . on a pro rata basis." *Id.* If, however, the policies contain reconcilable "other insurance" clauses, the Court must enforce coverage priority pursuant to the terms of the insurance policies. In that case, the primary policy must pay up to the limits of its coverage before the secondary coverage becomes effective. *Id.*

The Kookmin Policy contains an "other insurance" clause that, Kookmin argues, confirms that Kookmin's coverage is excess relative to Foremost's coverage. Kookmin is correct. The Kookmin Policy expressly provides that it is excess over "[a]ny other primary insurance available to [660 Realty] covering liability for damages arising out of the premises of operations for which [660 Realty] h[as] been added as an additional insured by attachment of an endorsement." JSF ¶ 14. It is undisputed that the Foremost Policy names 660 Realty as an additional insured. *Id.* ¶ 19. Thus, Kookmin's coverage is excess to Foremost's.

In response, Foremost argues that the "other insurance" clause in its policy renders Foremost's coverage excess as well, such that the two policies are irreconcilable and cancel each other out. If Foremost is correct, then it owes only co-insurance, apportioned on a pro rata basis. Foremost points to a clause in its policy stating that the policy is "excess over . . . any of the other insurance, whether primary, excess, contingent or on any other basis . . . that insures for direct physical loss to premises rented to you or temporarily occupied by you with permission of the owner." *Id.* ¶ 18. Foremost's reliance on that language, however, is misplaced. The insurance claims at issue here do not involve "direct physical loss to premises." Rather, the insurance claims involve liability coverage, based on Ore's actions seeking recovery for alleged personal injury.

In the absence of any other relevant language in the Foremost Policy, the Court concludes that Foremost's coverage obligation to 660 Realty is not excess relative to Kookmin's coverage. Foremost's coverage obligation, therefore, is primary. As Kookmin argues, it is entitled to be reimbursed by Foremost for the sums incurred in defending 660 Realty in the underlying personal injury actions, up to the limits of Foremost's coverage.

## CONCLUSION

For the reasons stated above, the Court grants Kookmin's motion for summary judgment both as to Foremost's duty to defend and its obligation to reimburse Kookmin for expenses Kookmin has incurred in defending against the underlying personal injury actions. Foremost's cross-motion for summary judgment is, correspondingly, denied. The Court respectfully directs the Clerk of Court to terminate the motions pending at docket entries 21 and 26.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 5, 2019
New York, New York